District Judge Robert S. Lasnik
Magistrate Judge Monica J. Benton

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

SEP 23 2002 PM

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

CV 02-00937 #00000009

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LOEUN LUN,
INS # A 25 283 626,
          Petitioner,

v.

JOHN ASHCROFT, Attorney General of the United States; ROBERT S. COLEMAN, JR., INS District Director; and the UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE,
          Respondents.

No. C02-937L(MJB)

I.N.S. RETURN AND STATUS REPORT AND MOTION TO DISMISS

(Note on Motion Calendar for Consideration on October 18, 2002)

    The Respondents (hereafter "I.N.S." or the "government") respectfully file the following memorandum as their Return to the Petition for Writ of Habeas Corpus, as a Status Report on this case, and as the government's cross-Motion to Dismiss or Stay this case. This memorandum is supported by the certified, paginated copy of the Petitioner's I.N.S. record of proceedings ("A-file"), filed herewith In the following statement of facts, "L" and "R" citations will refer to documents found on the left side or right side of Petitioner's A-file.

    1. <u>Immigration History</u>

    The Petitioner, Loeun Lun (a.k.a. Loeun Lou Lun) (R054), date of birth July 3, 1975 (L021; R064), INS # A25 283 626, is a native and citizen of Cambodia . (L004; R064). Mr Lun entered the United States at Honolulu, Hawaii on October 13, 1981 as a refugee. (L004). On or about February 18,

I N S RETURN AND STATUS REPORT - 1
C02-937L(MJB)
laf[Lun09-02)]INS\RSR-FACTS\MJM

ORIGINAL

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98104-3903
Tel (206) 553-7970

1  1997,[1] Mr. Lun's immigration status was adjusted to that of Lawful Permanent Resident retroactive to October 13, 1981. (L004; L021).

On August 24, 1999, Mr. Lun was interviewed by the INS in conjunction with his Naturalization application. During this interview, the fact that Mr. Lun had a criminal record first came to the attention of the INS. (R079; L021). As a result, on July 30, 2000, Mr. Lun's case was referred to INS Investigations to determine if he was subject to removal from the United States based on his criminal record. (R079).

On March 12, 2002, Mr. Lun was served with an INS arrest warrant and taken into INS custody. (L001-002; R079). The INS issued a Notice to Appear, placing Lun in removal proceedings and alleging deportability under INA § 237(a)(2)(A)(iii) [8 U.S.C. § 1227 (a)(2)(A)(iii)] in that he had been convicted of an aggravated felony, a crime of violence for which the term of imprisonment ordered was at least one year.[2] (L004; R066). Mr. Lun was ordered detained without bond, but on March 28, 2002, Seattle Immigration Judge Kendall Warren set bond at $6,000.00.[3] (L026; R079).

On April 8, 2002, removal proceedings were conducted before Seattle Immigration Judge Anna Ho. Judge Ho ordered Mr. Lun removed to Cambodia. (L033; R067). Mr. Lun waived any appeal to the Board of Immigration Appeals. (L033). Accordingly, Lun's removal order became administratively final on April 8, 2002. See INA § 101(a)(47)(B)(ii). [8 U.S.C. § 1101(a)(47)(B)(ii)].

2. Criminal History

On February 8, 1995, Mr. Lun was convicted in Pierce County Superior Court, Cause No. 94-1-03482-2, of Assault 2nd Degree (sentenced to 12 months in prison) and Assault 3rd Degree (sentenced to 8 months in jail). (L004; L006-009; R059). The incident involved the use and discharge of a weapon by Mr. Lun. (R057). The sentences were to run concurrently and, upon his release, Mr. Lun was to

---

[1] Other documents in Petitioner's A-file cite the date he was accorded status as LPR as February 18, *1987*. (R075; R079).

[2] Pierce County Superior Court Cause No. 94-1-03482-2. Mr Lun was convicted of Assault 2nd Degree and Assault 3rd Degree on February 8, 1995.

[3] The INS filed a notice of appeal regarding the redetermination of bond in this matter; however, on April 8, 2002, Lun was ordered removed to Cambodia and waived his appeal of the removal order. INS, therefore, moved to dismiss its appeal as moot. (L054).

INS RETURN AND STATUS REPORT - 2
C02-937L(MJB)
laf[Lun09-02)]INS\RSR-FACTS\MJM

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98104-3903
Tel (206) 553-7970

1 serve 12 months in community supervision. (L012; Judgment and Sentence at L017).

2 Mr. Lun's criminal history also reflects that he has been found guilty and/or found to have committed numerous traffic violations (approximately 22) from 1991 to 1998. These traffic violations included several No Valid Operator's License and Driving While License Suspended offenses. (R001-054; R079).

### 3. Final Order: Removal Period

Mr. Lun's removal order became a "final order", as defined in INA § 101(a)(47)(B) [8 U.S.C. § 1101(a)(47)(B)] on April 8, 2002, upon his waiver of an appeal to the BIA. The 90-day "removal period" established in INA § 241(a)(1) [8 U.S.C. § 1231(a)(1)] thus ended on July 8, 2002. The six-month period of post-final-order detention established by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491 (2001), accordingly ends on October 8, 2002. See Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001).

### 4. Removal Efforts

On April 10, 2002, the INS made a request for travel documents to the Embassy of Cambodia. (R069-071). The United States and the Cambodian governments have signed an agreement for the repatriation of Cambodian citizens to Cambodia, and we anticipate Mr. Lun's removal can be effected in the reasonably foreseeable future.

### 5. Custody Review

On July 3, 2002, Mr. Lun was notified that his custody status would be reviewed on or about July 15, 2002. (R073). Mr. Lun provided several letters from family members and friends, as well as his own letter, in support of his release. (L041; L051; L058-078). Mr. Lun's custody review was conducted on July 16, 2002. (R080). On July 23, 2002, the INS District Director issued a decision to continue Mr Lun's detention. (R082). The District Director based his decision upon a review of Petitioner's file and consideration of information supplied in support of Lun's release. In making his decision, the District Director concluded that Lun's repatriation to Cambodia is likely to occur in the reasonably foreseeable future; however, if a travel document has not been obtained by October 6, 2002, Mr. Lun's case will be transferred to the INS Headquarters Post Order Detention Unit for further review.

INS RETURN AND STATUS REPORT - 3
C02-937L(MJB)
laf[Lun09-02)]INS\RSR-FACTS\MJM

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98104-3903
Tel (206) 553-7970

6. Lawfulness of Detention

Mr. Lun's continued detention beyond the 90-day removal period is appropriate, in accord with 8 C.F.R. § 241.4(g)(2), which states:

> In making a custody determination, the District Director and the Director of the HQPDU shall consider the ability to obtain a travel document for the alien. If it is established at any stage of a custody review that, in the judgment of the Service, travel documents can be obtained, or such document is forthcoming, the alien will not be released unless immediate removal is not practicable or in the public interest.

Further, 8 C.F.R. § 241.4(a)(3) provides for continued detention of "An alien ordered removed who is removable under sections 237(a)(2) or 237(a)(4) of the Act . . . ." Mr. Lun has been convicted of an aggravated felony, as addressed in INA § 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii)].

Likewise, 8 C.F.R. § 241.4(g)(2) also provides for continued detention beyond the removal period of an alien ordered removed if a travel document can be obtained; to wit:

> The Service's determination that receipt of a travel document is likely may by itself warrant continuation of detention pending the removal of the alien from the United States.

Mr. Lun fails to meet his burden of proof that it is unlikely that the INS will not be able to effect his removal in the reasonably foreseeable future. The Governments of the United States and Cambodia have signed an agreement that allows repatriation of Cambodian nationals to Cambodia, see Exhibit A attached, and we fully expect Mr. Lun can be repatriated. Furthermore, the six-month period of presumptively lawful post-order detention established by the Supreme Court in Zadvydas, supra, continues to run and will not expire until October 8, 2002. If a travel document has not been obtained by that date, the HQPDU will conduct a further custody review.

7. Conclusion & Motion to Dismiss or Stay

Mr. Lun's continued detention by the INS is lawful because the six months has not yet expired and will not expire until on or about October 8, 2002. The Cambodian government is now issuing travel documents and, if one has not been obtained by that date, Mr. Lun's file will be forwarded to HQPDU for further custody review. Mr. Lun has been convicted of an aggravated felony and is deportable under INA § 237(a)(2)(A)(iii) [8 U.S.C. 1227(a)(2)(A)(iii)] Respondents respectfully request that, based upon the foregoing, Petitioner's habeas corpus petition be denied and dismissed or, in the alternative, that this

INS RETURN AND STATUS REPORT - 4
C02-937L(MJB)
laf[Lun09-02)]INS\RSR-FACTS\MJM

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98104-3903
Tel (206) 553-7970

1  Court stay this action until after the six-month period has expired to enable th INS to conduct its custody
2  review at that time. We so move.
3          Respectfully submitted this ___23rd___ day of September, 2002
4                                          JOHN McKAY
                                            United States Attorney
5                                          Western District of Washington

6                                          *Christopher L. Pickrell*
                                            CHRISTOPHER L. PICKRELL
7                                          Assistant United States Attorney
                                            601 Union Street, Suite 5100
8                                          Seattle, Washington 98101-3903
                                            Tel 206-553-4088; Fax 206-553-0116
9                                          E-mail chris.pickrell@usdoj.gov
                                            WSBA # 12787
10                                         ATTORNEY FOR RESPONDENTS

11

12                          CERTIFICATE OF SERVICE

13     I CERTIFY that on this date I caused to be mailed a copy of the foregoing document to the
14  attorney for Petitioner:

15  Jay W. Stansell
    Assistant Federal Public Defender
16  1111 Third Avenue, Suite 1100
    Seattle, WA 98101-3207
17          Tel    206-553-1100, x211
            Fax    206-553-0120
18          Email  jay_stansell@fd.org

19      DATED this ___23rd___ day of September, 2002.

20

21                                          *Sheila Sowecke*
                                            Sheila Sowecke
22                                          Legal Assistant
                                            Office of the United States Attorney
23                                          Seattle, Washington

24

25

26

27

28

I N S RETURN AND STATUS REPORT - 5
C02-937L(MJB)
laf[Lun09-02)]INS\RSR-FACTS\MJM

UNITED STATES ATTORNEY
601 Union Street, Suite 5100
Seattle, Washington 98104-3903
Tel (206) 553-7970

MEMORANDUM BETWEEN THE GOVERNMENT OF THE UNITED STATES
AND THE ROYAL GOVERNMENT OF CAMBODIA FOR THE
ESTABLISHMENT AND OPERATION OF
A UNITED STATES-CAMBODIA JOINT COMMISSION
ON REPATRIATION

The Government of the United States of America (United States) and the Royal Government of Cambodia (Cambodia):

Recognizing their mutual international obligations to accept the return of their nationals in an orderly, prompt, and humane manner;

Desiring to establish and advance the development of normal immigration relations, in accordance with general recognized principles of international law and practice;

Desiring to put into effect the principles adopted by both States in the Joint Statement made in Phnom Penh on April 27, 2000, and subsequently endorsed by order of the Royal Government of Cambodia on June 21, 2000; and

Desiring to further enhance cooperative and friendly relations between the two States on the basis of respect for each State's sovereignty, and on the basis of equality and mutual interest;

Hereby establish the following Principles and Objectives which are intended to govern the establishment and operation of a Joint Commission on Repatriation:

### Fundamental Principles

1. Each repatriation request should be considered and decided individually, on a case-by-case basis, without preconditions.

2. The United States and Cambodia should act in a spirit of mutual cooperation in determining the nationality of an individual and in all other matters pertaining to repatriation.

3. The United States and Cambodia are committed to the primary objective of effecting the return of each other's nationals to their home State, taking into account the humanitarian and compassionate aspects of each case and the principles of internationally recognized human rights.

4. Nothing in this document imposes, or should be construed to impose, any legal or financial obligations on either State.

**EXHIBIT A**

### Composition of the Joint Commission and Scheduling of Meetings

1. The Joint Commission on Repatriation (Commission) should be comprised of four (4) members from the United States and four (4) from Cambodia, representing the ministries of immigration, foreign affairs, and justice, or their equivalent, of such State.

2. The Commission should meet twice each year, or as mutually agreed, at times and locations to be mutually determined.

### Procedures/Modalities for Considering Repatriation Requests

1. Each State should designate a Central Authority for the receipt and initial screening of repatriation requests and related matters.

2. The Commission should be the primary forum for the discussion and resolution of repatriation policy and individual repatriation requests refused by the Central Authority of the requested State.

3. Unless otherwise agreed, all repatriation requests shall be initially sent to the Central Authority of the requested State and should include:

    a. a copy of the final order of removal issued by the competent authority of the requesting State;
    b. a copy of the individual's passport, if available, or other documentation evidencing the identity and biographical history of the individual and his or her status as a national of the receiving State;
    c. a copy, if any, of any available record of the individual's criminal violations in the requesting State;
    d. two identical photographs of the individual and his or her fingerprints and medical history, if available;
    e. any additional information that the Central Authority of the requested State deems necessary.

4. Upon receiving and reviewing a repatriation request, the Central Authority of the requested State may request the assistance and resources of the Central Authority of the requesting State in conducting any additional interview of the individual and verifying any information contained in the request.

5. The Central Authority of the requested State should respond in writing to the Central Authority of the requesting State not later than 30 days from the date of receipt of the request, unless otherwise agreed. In all cases of refusal, the Central Authority of the

2

requested State should state its reasons in writing and should refer the request to the Commission for consideration. The Commission shall consider all referred requests at its next scheduled meeting.

6. When the Central Authority of the requested State accepts a repatriation request, it should simultaneously issue a travel document, valid for at least 60 days, to permit the individual's return. The requesting State should expeditiously make the appropriate arrangements for the return of the individual to the requested State, and should inform the Central Authority of the requested State at least seven (7) business days in advance of the return itinerary and any special considerations, such as medical, law enforcement, or escort matters.

7. Unless otherwise agreed, all costs of repatriation, including air transportation and escort services, should be borne exclusively by the requesting State.

Signed at Phnom Penh on March 22, 2002, in duplicate, in both the English and Khmer languages with identical value.

FOR THE GOVERNMENT OF THE  
UNITED STATES OF AMERICA

FOR THE ROYAL GOVERNMENT  
OF CAMBODIA

Kent M. Wiedemann  
Ambassador of the  
United States of America

Lt. Gen. Em Sam An  
Secretary of State  
Ministry of Interior